[No. H000435. Sixth Dist. June 3, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES CHRISTIAN JONES, Defendant and Appellant.

**COUNSEL**

Scott T. Carss, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edward P. O'Brien, Assistant Attorney General, and Josanna Berkow, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**AGLIANO, P. J.**—Defendant Charles Christian Jones was found not guilty by reason of insanity of voluntary manslaughter with personal use of a firearm. Pursuant to Penal Code section 1026, Jones was committed to a state hospital until his sanity was restored or until a maximum term of eight years had expired.

Jones filed an application for release under Penal Code section 1026.2, and requested a jury trial for determination of return to sanity. On February 1, 1985, a jury, by a vote of 11 to 1, found that Jones remained a danger to the health and safety of himself and others. Based on that verdict the court entered a judgment recommitting defendant to the Department of Mental Health for placement in a state hospital. Pursuant to Penal Code, section 1237, defendant filed a timely notice of appeal from that judgment.[1] He contends that the trial court erred in limiting his peremptory

---

[1] We note that the instant appeal could be dismissed as moot, since appellant now has the opportunity of filing another application for his release under section 1026.2, for a person

juror challenges to six instead of ten and in denying his pretrial motion for change of venue.

## DISCUSSION

### Peremptory Challenges

■ Jones contends that the trial court erred in limiting him to the six peremptory juror challenges allowed in a civil proceeding (Code Civ. Proc., § 601, Stats. 1978, ch. 98, § 1, p. 260), rather than the ten allowed in a criminal trial. (Pen. Code, § 1070.) He argues that a sanity restoration hearing is a special proceeding which is sufficiently characterized by features and indicia peculiar to a criminal action that he is entitled to the number of peremptory challenges provided in a criminal trial. We disagree.

Jones primarily relies on *People* v. *Coleman* (1978) 86 Cal.App.3d 746 [150 Cal.Rptr. 415], where it was the defendant who argued that a sanity restoration hearing is civil in nature. Coleman wished a court rather than jury hearing on the issue of restoration of sanity. The People refused to consent to waiver of jury. Coleman argued that in the absence of his affirmative request to impanel a jury he was entitled to the correlative right of a nonjury or court hearing traditionally applicable to special proceedings civil in nature. In requiring prosecutorial consent as a condition to an effective waiver of jury in a restoration hearing, the First District Court of Appeal (Division One) reasoned that the restoration hearing was "a special proceeding characterized by features and indicia peculiar to a criminal action . . ." and that therefore it should adhere to this procedural requirement "as presently mandated in criminal causes in general." (*Id.* at pp. 751-752.)

However, in *People* v. *Mapp* (1983) 150 Cal.App.3d 346 [198 Cal.Rptr. 177], where the defendant attempted to rely on *Coleman* for the proposition that the court in a sanity restoration jury trial was precluded from utilizing the directed verdict procedure, Division Three of the First District decided

who has unsuccessfully petitioned for release under that statute may file another petition for release after one year has elapsed. It is apparent to us, however, that were we to dismiss the petition, we might never have occasion to reach the important question presented herein regarding the number of peremptory jury challenges available to a defendant in a sanity restoration hearing. "We should, of course, avoid advisory opinions on abstract propositions of law. [Citations.] But we should not avoid the resolution of important and well litigated controversies arising from situations which are 'capable of repetition, yet evading review.' [Citations.]" (*In re William M.* (1970) 3 Cal.3d 16, 23, fn. 14 [89 Cal.Rptr. 33, 473 P.2d 737].) We feel our determination of this issue is justified here, where given the annual petition process available under section 1026.2, it is clear that the denial of an earlier petition could consistently escape appellate review if not reviewed before a second application for release is permitted. (See *People* v. *Allesch* (1984) 152 Cal.App.3d 365, 371 [199 Cal.Rptr. 314].)

it did not necessarily follow that because section 1026.2 is a proceeding characterized by some features and indicia peculiar to a criminal action there could be no directed verdict. After noting that even criminal cases permit a form of directed verdict, the court reasoned that the following three factors, "that (1) petitioner, appellant here, has the burden of proof, (2) the preponderance of the evidence standard and (3) the three-fourths jury verdict demonstrate the inherently civil nature of a section 1026.2 proceeding." (*Id.* at p. 351, fn. omitted.)

In deciding that a petitioner asking for a determination of restoration of sanity following acquittal by reason of insanity was entitled to a jury trial, the California Supreme Court in *In re Franklin* (1972) 7 Cal.3d 126 [101 Cal.Rptr. 553, 496 P.2d 465] based its decision on the fact that equal protection required such a petitioner to be treated similarly to patients civilly committed. (*Id.* at p. 148.) Again, in determining that such a petitioner was entitled to a three-fourths verdict, the court recognized that the commitment here, just as the commitment of Youth Authority wards under section 1800 of the Welfare and Institutions Code, was analogous to civil commitment procedures for mentally disordered sex offenders and narcotic addicts. Given that Jones's right to jury trial flows from the similarity in his proceedings with those of patients civilly committed and the fact that the burden of proof, standard of proof, and lack of insistence on a unanimous verdict are most closely analogous to civil commitment procedures, we follow the logic in *Mapp* in holding that the superior court was correct in its determination that a restoration to sanity jury trial is inherently civil in nature and its corresponding determination to allow six, rather than ten, peremptory jury challenges.

*Change of Venue Motion*

Because appellant is now entitled to reapply for release and to request another jury determination as to restoration of sanity (Pen. Code, § 1026.2, subd. (j)), we need not reach his claim that the "anti-Jones" sentiment in Santa Cruz County prior to his January 1986 jury trial made it impossible for him to receive a fair and impartial hearing in that county. Were we to reverse the order herein and remand for a new trial on the change of venue issue, or whether Jones simply requests another jury trial by filing another application for release under Penal Code section 1026.2, the net result would be the same; in either event, at such time as appropriate prior to appellant's new trial on restoration of sanity, he would be entitled to make a pretrial motion for change of venue if he believed that he could not receive a fair and impartial trial at that time. This issue is moot and therefore need not be resolved on the merits.

## CONCLUSION

The judgment is affirmed.

Capaccioli, J., and Evans, J.,* concurred.

---

*Assigned the Chairperson of the Judicial Council.