BERT ARMBRUSTER AND IRENE ARMBRUSTER, HUSBAND AND WIFE, APPELLEES, V. STANTON-PILGER DRAINAGE DISTRICT, APPELLANT.

280 N. W. 2d 72

Filed June 19, 1979. No. 42318.

Grady, Caskey & Thor, for appellant.

Vince Kirby, for appellees.

Heard before BOSLAUGH, MCCOWN, and BRODKEY, JJ., and RIST and WOLF, District Judges.

BOSLAUGH, J.

The plaintiffs own the north half of Section 24, Township 23 North, Range 2 East of the 6th P.M., in Stanton County, Nebraska. Cedar Creek enters the property from the south at a point near the southeast corner of the land, flows in a northwesterly direction across the northeast quarter of the section, and leaves the property of the plaintiffs at a point near the center of the north line of the section.

Prior to 1950 the Elkhorn River followed a meandering course through the section north of the plaintiffs' property. Cedar Creek flowed into the Elkhorn River at a point approximately 2,200 feet north of the plaintiffs' property. In 1950 the defendant, Stanton-Pilger Drainage District, straightened the Elkhorn River channel north of the plaintiffs' property. As a part of the project the district constructed a pilot channel which intersected Cedar Creek at a point approximately 990 feet north of the plaintiffs' property. The bed of the pilot channel was approximately 6 feet below the bed of Cedar Creek at the point of intersection, which had the effect of creating a waterfall at the point where Cedar Creek flowed into the Elkhorn River. As a result of the difference in elevation between the bed of the river and the creek, there was substantial erosion which progressed upstream on Cedar Creek and into the property of the plaintiffs.

In 1960 the plaintiffs recovered a judgment against the defendant, pursuant to the mandate of this court, for damages in the amount of $12,240 and a mandatory injunction was granted which required the defendant to "construct in Cedar Creek a structure, or other constructions, or to take such other actions as may be necessary to prevent further erosion in Cedar Creek upon plaintiffs' land and further dam-

ages thereto and to prevent future deepening of the bed of said stream upon plaintiffs' land, caused by the acts of the defendant district in intersecting the bed and banks of Cedar Creek by and with its pilot ditch as set forth and found in the opinion of the Supreme Court.'' The facts are set out in detail in the opinion referred to which is reported in 169 Neb. 594, 100 N. W. 2d 781. See, also, Armbruster v. Stanton-Pilger Drainage Dist., 165 Neb. 459, 86 N. W. 2d 56.

Pursuant to the mandatory injunction, the defendant erected a structure in Cedar Creek near the north line of the plaintiffs' land in 1960 and 1961. The structure amounts to a dam which raises the flow line of Cedar Creek to an elevation approximately that of the bed of the creek in 1956 or about 10 feet above the bed of the creek as it existed at that point in 1960.

This action was commenced sometime prior to February 5, 1975, to recover damages for erosion to the plaintiffs' land caused by the defendant's failure to comply with the mandatory injunction.

The defendant's answer admitted the plaintiffs were the owners of the land involved in this action and alleged that the structure erected in 1960 and 1961 stopped the erosion in Cedar Creek. The answer further alleged waiver, res judicata, and estoppel.

The trial court found that the structure erected in Cedar Creek by the defendant was constructed in good faith but did not stabilize Cedar Creek or prevent further erosion on the plaintiffs' land; the "water fall and rapids area" continues to move upstream through the plaintiffs' land widening and deepening the channel of the creek as it moves; and the plaintiffs had been damaged in the amount of $11,550 since December 23, 1958, the effective date of the 1960 judgment recovered by the plaintiffs.

The defendant has appealed and contends that the plaintiffs are not the real parties in interest and the

judgment is not supported by the evidence. Since this is a proceeding in equity we review the record de novo.

The defendant's contention that the plaintiffs are not the real parties in interest is based upon testimony by Bert Armbruster that he had sold the land to his son on contract some time after this action had been commenced. The contract was not produced and there is no evidence in the record to show exactly what the interests of the parties were. The inference from the record is that the plaintiffs retained the legal title and a substantial beneficial interest. At most, there may have been a defect of parties plaintiff which was waived if not timely raised. See Cromwell v. Ward, 192 Neb. 178, 219 N. W. 2d 446.

The defendant did not seek to be relieved from its admission in its answer that the plaintiffs owned the land. This was a judicial admission which was a waiver of all controversy concerning the matter. See Krueger v. Krueger, 169 Neb. 82, 98 N. W. 2d 360. In view of the state of the record, the trial court did not err in overruling the defendant's motion to dismiss.

Although there is some conflict in the evidence, the record as a whole establishes that the structure erected by the defendant in Cedar Creek in 1960 and 1961 did not stabilize the channel of Cedar Creek and prevent further erosion upon the plaintiffs' land. The evidence shows that the channel of Cedar Creek upon the plaintiffs' property has steadily deepened and widened as the waterfall and rapids area has continued to move upstream. The channel which formerly was 32 to 35 feet wide and 8 to 10 feet deep is now 80 to 100 feet wide in some places and more than 20 feet deep.

In 1961 the defendant, at its expense, straightened a part of the channel of the creek on the plaintiffs' land to prevent the erosion from progressing into the

plaintiffs' farmyard and destroying the buildings and other improvements. Although this work appears to have saved the plaintiffs' buildings and improvements from destruction, erosion has continued. The creek has moved to within 16 feet of an irrigation well. A flume that the plaintiffs used to convey irrigation water to the land north and east of the creek collapsed as a result of the erosion and a new pipe supported by poles and cable had to be erected. At the point where the private bridge had been located, the creek is now about 100 feet wide. Cattle can no longer cross the creek at any place on the plaintiffs' property. The plaintiffs no longer have direct access to their land north and east of the creek from the land which is south and west of the creek.

The damage to the plaintiffs' land, caused by the defendant's failure to stabilize the channel of Cedar Creek upon the plaintiffs' land, was of a continuing nature, and the record fully sustains the findings and award of damages made by the trial court, which we adopt. The defendant's claim of waiver, res judicata, or estoppel is not sustained by the record.

The judgment is affirmed.

AFFIRMED.