STATE OF NEBRASKA EX REL. PAUL L. DOUGLAS, NEBRASKA ATTORNEY GENERAL, AND STEVEN M. CURRY, MERRICK COUNTY ATTORNEY, APPELLEES, V. MARJORIE BIGELOW, DOING BUSINESS AS NEBRASKA CHRISTIAN LIBERTY ACADEMY, APPELLANT.

334 N.W.2d 444

Filed May 27, 1983. No. 82-377.

Marjorie Bigelow, pro se.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

CAPORALE, J.

In this appeal defendant-appellant, Marjorie Bigelow, seeks to reverse the trial court's order perma-

nently enjoining her from operating "a school in her home." We affirm as modified.

The State of Nebraska instituted this action to enjoin the defendant from violating Neb. Rev. Stat. §§ 79-201 and 79-1701 (Reissue 1981) and rule 14 of the Nebraska State Department of Education (Rev. 1976). In her answer the defendant alleged that she was not subject to the state's laws because of the rights accorded to her sincerely held religious beliefs by the first, ninth, and fourteenth amendments to the U.S. Constitution.

Section 79-201 requires every person residing in a school district within Nebraska who has legal or actual charge or control of any child not less than 7 nor more than 16 years of age to cause such child to regularly attend a public, private, denominational, or parochial school. Section 79-1701 makes all such schools in the state, and the teachers employed or giving instruction therein, subject to Nebraska's general school laws so far as those laws apply to grades, qualifications, and certification of teachers, and promotion of pupils. Neb. Rev. Stat. § 79-1233 (Reissue 1981) requires that teachers hold a permit or certificate issued by the Commissioner of Education. Rule 14 of the Department of Education, promulgated pursuant to the provisions of Neb. Rev. Stat. § 79-328 (Reissue 1981), provides for the approval of public and nonpublic schools and requires, among other things, a variety of applications, inspections, and reports, including attendance reports.

The record establishes that since August of 1980 defendant's daughter, Dawn Bigelow, has received her entire education at home. At the time of trial Dawn was 13 years old. As the sole teacher defendant uses a curriculum provided by mail from the Christian Liberty Academy of Prospect Heights, Illinois. Defendant, who herself has but an eighth grade education, is the sole supervisor of the education which Dawn receives. Neither defendant nor anyone else who is present during Dawn's schooling

holds a teaching certificate or permit. Although daily attendance is taken, no attendance reports are made to the superintendent of schools, nor has defendant, or anyone on her behalf, applied for approval of the school located in her home. When the superintendent of the Palmer Public School became concerned about Dawn's absence from school in September of 1980, he attempted to determine the cause by appearing at the Bigelow residence. The presence of a guard dog made it impossible for him to conduct any investigation or inspection.

The assignments of error discussed in defendant's brief contend that the trial court erred in (1) failing to grant defendant a continuance, (2) enjoining conduct subject to criminal penalties, and (3) applying the laws of this state to defendant.

As to the first assignment of error, defendant argues that the failure to grant her a continuance deprived her of the effective assistance of counsel. The initial statutory answer day in this case was April 27, 1981. On April 24, 1981, Mr. Dana Baker, a member of the bar of this state practicing with Treadway & Bird, P.C., at Fullerton, Nebraska, moved for a 45-day extension of time within which to plead. On May 6, 1981, the trial court granted a 21-day extension. The answer was filed by Mr. Baker on May 15, 1981. On September 14, 1981, the State filed a motion for summary judgment. A hearing was had thereon on October 5, 1981; the motion was overruled on October 15, 1981. On that latter date the trial court also scheduled the State's request for a temporary injunction for hearing on January 13, 1981 (sic). A hearing was had on January 13, 1982, at which time defendant was represented by Mr. Baker and one Daniel Jon Loomis, who was admitted to practice in this state at that time pro hac vice, pursuant to the provisions of Neb. Rev. Stat. § 7-103 (Reissue 1977). Mr. Loomis is a member of the Michigan bar and practices with Gibbs & Craze, Co., L.P.A., an Ohio law firm. The January 13, 1982,

hearing resulted in a January 19, 1982, order which denied the State's request for a temporary injunction and which set this case for trial on the merits beginning at 9 a.m. on February 4, 1982. On February 2, 1982, Mr. Baker filed a motion seeking a continuance. Among the considerations underlying that motion were defendant's as well as Mr. Baker's understanding that Gibbs & Craze was to actually represent the defendant at the trial; that on January 29, 1982, Mr. Baker and the defendant were informed that Gibbs & Craze would not represent the defendant because defendant's case did not fall within the guidelines established by Gibbs & Craze for its practice; that inadequate time remained for Mr. Baker to prepare defendant's constitutional defenses; and that Mr. Baker was unable to secure the presence of lay and expert witnesses. The fact remains, however, that Mr. Baker had actively participated in the case for a period of at least 8 months before trial. Under these circumstances, it cannot be said that Mr. Baker was unfamiliar with the strategies to best be employed on defendant's behalf. Indeed, the record itself convinces us that Mr. Baker examined and cross-examined witnesses knowledgeably and demonstrated a thorough understanding of the issues and law involved. The courts of Nebraska look primarily to members of its bar for the conduct of litigation in which they appear. That is one of the reasons for the requirement of § 7-103, that attorneys admitted to practice in other states associate with members of the Nebraska bar when appearing in this state. See, *Emry v. American Honda Motor Co., ante* p. 435, 334 N.W.2d 786 (1983); *Lincoln Welding Supply v. Inhalation Plastics*, 213 Neb. 862, 331 N.W.2d 804 (1983); *Nebraska State Bank v. Dudley*, 203 Neb. 226, 278 N.W.2d 334 (1979), *appeal dismissed* 444 U.S. 804, 100 S. Ct. 24, 62 L. Ed. 2d 17. Further, a motion for continuance is addressed to the sound discretion of the trial court, and in the absence of a showing of an abuse of discretion, a ruling

on such a motion will not be disturbed on appeal. *Vlcek v. Sutton*, 201 Neb. 555, 270 N.W.2d 906 (1978); *Veik v. The Tilden Bank*, 200 Neb. 705, 265 N.W.2d 214 (1978). The trial court did not abuse its discretion by denying defendant's motion for continuance.

Next we consider defendant's claim that injunctive relief is inappropriate. Neb. Rev. Stat. §§ 79-216 and 79-1707 (Reissue 1981) provide that any person violating §§ 79-201 and 79-1701 shall be guilty of a Class III misdemeanor. Neb. Rev. Stat. § 28-106 (Reissue 1979) provides no minimum penalty for the violation of a Class III misdemeanor but provides for a maximum penalty of 3 months' imprisonment, or a $500 fine, or both. Defendant argues that the State cannot enjoin conduct which subjects her to criminal penalties. This proposition was reviewed and adjudicated adversely to defendant's position in *State ex rel. Douglas v. Faith Baptist Church*, 207 Neb. 802, 301 N.W.2d 571 (1981), *appeal dismissed* 454 U.S. 803, 102 S. Ct. 75, 70 L. Ed. 2d 72, and requires no further comment. She is simply wrong in that regard and misses the point when she argues that she is not a threat to anyone and therefore injunctive relief is improper, such a threat being a necessary prerequisite thereto. She is in fact a real, present, and serious threat to the education of her daughter, a minor in whose education the State of Nebraska has a compelling interest.

As to the third assignment of error, although defendant's answer refers to first, ninth, and fourteenth amendment rights under the U.S. Constitution, she in essence argues only the rights of first amendment religious freedom in her brief. She submits that the laws of Nebraska do not apply to her because they conflict with her sincerely held religious beliefs. Again, the same constitutional claims which defendant makes here were analyzed and adjudicated adversely to her position in *Faith Baptist Church, supra*, and its predecessor, *Meyerkorth v. State*, 173 Neb. 889, 115 N.W.2d 585 (1962),

*appeal dismissed* 372 U.S. 705, 83 S. Ct. 1018, 10 L. Ed. 2d 125 (1963). No useful purpose would be served by restating the legal analyses and rationales for the rulings pronounced therein. Suffice it to say that the opinion of this court in *Faith Baptist Church, supra,* enunciates the law of Nebraska with respect to the constitutional issues presented by this case.

Defendant's conduct constitutes a flagrant violation of Nebraska law. All those who live within the borders of Nebraska are necessarily subject to its law; all those must therefore abide by that law or suffer the consequences of their failure to do so.

Defendant assigns an additional error in the following words: "The District Court erred in allowing adjudication to continue after jurisdiction was challenged when the State Department of Education did not prove from substantive law that it had jurisdiction." Whatever that assignment may mean, it is not discussed in defendant's brief. Errors assigned but not discussed will generally not be considered. Neb. Rev. Stat. § 25-1919 (Reissue 1979); *State v. Hochstetler, post* p. 482, 334 N.W.2d 455 (1983); *Flakus v. Schug,* 213 Neb. 491, 329 N.W.2d 859 (1983).

This being an equitable proceeding, we review the record de novo and reach an independent conclusion without reference to the conclusion reached by the trial court. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Anderson v. Clemens Mobile Homes, ante* p. 283, 333 N.W.2d 900 (1983); *Craig v. Kile,* 213 Neb. 340, 329 N.W.2d 340 (1983). That being so, we now modify the trial court's injunction to make clear that defendant may supplement her daughter's education whenever, however, and to whatever degree she may wish, but may nonetheless not operate a school in violation of Nebraska law nor cause Dawn Bigelow to be a truant.

The injunction is therefore modified to read that defendant be, and hereby is, permanently enjoined from operating a school in violation of the laws of

Nebraska and further be, and hereby is, enjoined from preventing Dawn Bigelow, while not more than 16 years of age, from regularly attending a public, private, denominational, or parochial day school operated in compliance with the laws of this sovereign state.

AFFIRMED AS MODIFIED.